UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALVIN PERKINS, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | 15 C 6188 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., LATONYA WILLIAMS, JAMES CARUSO, ATHENA SMITH, LAURA KERCINIK, LIDIA LEWANDOWSKA, KRISI ESHLEMAN, REBECCA BUCZKOWSKI, and DONALD MILLS, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum Opinion and Order

In this suit under 42 U.S.C. § 1983, Alvin Perkins, Jr. alleges that Latonya Williams, James Caruso, Athena Smith, Laura Kercinik, Lidia Lewandowska, Krisi Eshleman, Rebecca Buczkowski, Donald Mills, and Wexford Health Sources, Inc. violated the Eighth Amendment in connection with the medical treatment he received in prison. Doc. 117. After recruited counsel prepared and filed a second amended complaint, Doc. 47, the court dismissed all claims against certain defendants and several claims against Wexford, Docs. 88-89 (reported at 2017 WL 5070234 (N.D. Ill. Nov. 3, 2017)); Doc. 105.

Counsel filed a third amended complaint, Doc. 91, and then a fourth amended complaint, which names several new defendants, including Athena Smith and Laura Kercinik, who are employed by Wexford, and Krisi Eshleman, Rebecca Buczkowski, and Donald Mills, who are employed by the Illinois Department of Corrections ("IDOC"), Doc. 117. Those defendants move under Civil Rule 12(b)(6) to dismiss the claims against them. Docs. 120, 140. The motions are granted as to Smith, Kercinik, Eshleman, and Mills, but denied as to Buczkowski.

1

## Background

In resolving a Rule 12(b)(6) motion, the court must accept the operative complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Perkins's favor, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Perkins's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Perkins as those materials permit. *See Domanus v. Locke Lord, LLP*, 847 F.3d 469, 479 (7th Cir. 2017). In setting forth the facts at this stage, the court does not "vouch for their accuracy." *Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 291 (7th Cir. 2018). Familiarity with the court's prior summary of Perkins's allegations is presumed, 2017 WL 5070234, at *1-3, so this recitation focuses on the allegations pertinent to the present motions.

Perkins was imprisoned at Stateville Correctional Center from December 9, 2013 to December 11, 2013; at Pontiac Correctional Center from December 11, 2014 to March 11, 2015; and again at Stateville from March 11, 2015 to September 27, 2016. Doc. 117 at ¶ 5. Wexford contracts with IDOC to provide health services at Pontiac and Stateville. *Id*. at ¶ 6. Smith and Kercinik were nurses employed by Wexford, while Mills was a nurse and Eshleman and Buczkowski were medical technicians employed by IDOC. *Id*. at ¶¶ 9-10, 12-14.

In August 2014, during his first stint at Stateville, Perkins developed a painful rash around his groin area. *Id*. at ¶ 17. In September, he began to experience swelling, stiffness, and pain in his right index finger. *Id*. at ¶ 19. By October, those symptoms, which spread to his

fingers on both hands, had become debilitating and limited his performance of simple tasks. *Id*. at ¶ 20. Meanwhile, the rash spread to his legs and arms and began to blister and scab, causing severe pain. *Id*. at ¶ 21.

Despite months of requesting medical appointments and submitting grievances after an initial appointment on August 24, 2014, Perkins did not see another medical professional until December 11, when Smith conducted a routine medical screening at Stateville before his transfer to Pontiac. *Id*. at ¶¶ 17-18, 22-28. In her notes, Smith did not reference Perkins's chronic hand pain or rash, and included one-word notations about his other long-term conditions. *Id*. at ¶ 28. When Perkins arrived at Pontiac that day, Eshleman conducted a routine screening and reported that Perkins "had no complaints regarding his health … and was in good physical condition." *Id*. at ¶ 29. Eshleman did not recommend that Perkins receive further medical attention. *Ibid*.

On March 1, 2015, after months of pursuing requests for medical treatment and submitting grievances, Perkins saw Buczkowski about his rash, which at that point covered his arms and legs. *Id*. at ¶¶ 30-35. To address Perkins's pain, Buczkowski ordered a week's supply of 1% hydrocortisone cream despite Wexford's policy that the cream should be used only for "non-serious rashes" and not on "open wounds or lesions or suspected fungal infections." *Id*. at ¶ 35. Buczkowski did not attempt to diagnose or consider a physician referral for the rash. *Ibid*. When Perkins next saw Buczkowski on March 5, Perkins reported that the hydrocortisone cream was not working and that he was experiencing chronic pain and mobility issues in his right hand. *Id*. at ¶ 36. Despite this, Buczkowski did not recommend any additional treatment or follow-up for either condition. *Ibid*.

When Perkins was transferred back to Stateville on March 11, Kercinik conducted a routine health screening. *Id*. at ¶ 39. Kercinik's notes reflect that Perkins did not have any

3

current complaints about his health. *Ibid*. Perkins thereafter experienced increased difficulty bending his fingers and gripping objects as well as additional stiffness in his right shoulder and lower back. *Id*. at ¶¶ 41, 43. Perkins informally obtained hydrocortisone cream from other inmates to try to alleviate the severe pain from his rash; the cream temporarily reduced his pain but did not improve the rash. *Id*. at ¶ 40. Perkins received no response to a new grievance about the lack of medical care at Stateville. *Id*. at ¶ 42.

Perkins first saw Mills on May 13, 2015. *Id*. at ¶ 44. Mills noted that Perkins was experiencing severe pain in his back and shoulder and had limited mobility in his right arm and shoulder. *Ibid*. Mills did not refer Perkins to a physician, but instead prescribed him ibuprofen and told him to return if his symptoms did not improve after 48 hours. *Ibid*. Wexford's protocol for back pain was to refer patients to a physician if their "severe pain" did not improve "after 48 hours of regular treatment." *Ibid*. (alteration omitted).

Following his appointment with Mills, Perkins continued to request and file grievances for appointments with a nurse or physician. *Id*. at ¶¶ 45-46, 48, 53-57. After falling from his bunk in July 2015 because he could not grip the bedframe, Perkins saw Mills for the second time on October 27, 2015. *Id*. at ¶¶ 49, 58. At that appointment, Mills referred Perkins to the medical sick call and prescribed acetaminophen and cold compresses for his hand pain. *Id*. at ¶ 58. Mills also prescribed acetaminophen and a 48-hour waiting period for Perkins's back pain after noting that his pain and mobility had improved since his May 2015 visit with Mills. *Ibid*. Finally, Mills ordered a week's supply of 1% hydrocortisone cream, but did not attempt to diagnose the rash or explore any relationship between Perkins's chronic hand pain and back pain. *Ibid*.

Before proceeding, the court notes that the foregoing recitation of the facts does not include certain allegations that the operative complaint pleads "on information and belief."

4

Under Civil Rule 8(a), a party alleging matters "peculiarly within" another person's knowledge may plead those matters on "information and belief." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) ("Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed.") (internal quotation marks omitted); *see also FirstMerit Bank, N.A. v. Ferrari*, 71 F. Supp. 3d 751, 757 (N.D. Ill. 2014) (holding that the defendant's motive "is a matter within [its] knowledge" and thus may be pleaded "on information and belief") (collecting cases). "However, pleading on information and belief is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader or 'presumptively' within his knowledge, unless he rebuts that presumption." 5 Wright & Miller, Federal Practice & Procedure § 1224 (3d ed. 2018); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts based on information and belief *where the facts are peculiarly within the possession and control of the defendant … .*") (emphasis added) (internal quotation marks and citation omitted).

Many allegations that the operative complaint makes on "information and belief" concern matters, such as what transpired (or did not transpire) during Perkins's medical appointments, that are presumptively within his personal knowledge. Doc. 117 at ¶¶ 28 ("On information and belief, Smith did not question Perkins about his health or physically examine him in connection with the transfer … ."), 29 ("On information and belief, Eshleman did not question Perkins about his health or physically examine him in connection with the transfer."), 39 ("On information and belief, Kercinik did not question Perkins about his health in connection with the transfer."), 44 ("On information and belief, Perkins raised both the more recent back pain and the chronic hand pain during the May 13, 2015 visit [with Mills]. … On information and belief, Mills did not

examine Perkins'[s] fingers or hands … ."). Perkins failed to rebut the presumption that he has personal knowledge of what happened during his own medical appointments, so the court does not consider those allegations to be well-pleaded for purposes of the present Rule 12(b)(6) motions. *See Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 448 (6th Cir. 2014) ("The only possible misrepresentation occurred during the phone call, but because those allegations were pled on information and belief, it appears that not even the [plaintiffs] are sure whether [the defendant] told them the September 2012 letter pertained to the 2004 mortgage or not. This court cannot reasonably draw an inference … on these facts."); *Johnson v. City of N.Y.*, 2017 WL 2312924, at *15 n.13 (S.D.N.Y. May 26, 2017) ("Plaintiff does allege: 'Upon information and belief, the background check included taking plaintiff's fingerprints.' … [T]he [c]ourt does not assume that allegation to be true because the taking of Plaintiff's fingerprints is within Plaintiff's personal knowledge."); *Hutchens v. Alameda Cnty. Soc. Servs. Agency*, 2008 WL 4193046, at *5 (N.D. Cal. Sept. 10, 2008) (holding that because the plaintiffs "presumptively know whether or not [the defendant] had consent for the blood draws or drug tests," they could not plead non-consent on information and belief).

**Discussion**

The complaint alleges in pertinent part that Smith, Eshleman, Kercinik, Mills, and Buczkowski were deliberately indifferent to Perkins's serious medical conditions and violated the Eighth Amendment by repeatedly delaying and canceling appointments and by failing to treat his serious medical conditions. Doc. 117 at ¶¶ 64-72. The complaint further alleges that Kercinik, Mills, and Buczkowski failed to make referrals for or adequately treat his arthritis, and that Mills and Buczkowski failed to make referrals for or adequately treat his rash. *Id*. at ¶¶ 73-90.

Where "prison medical staff exhibit deliberate indifference to an inmate's serious medical condition, they subject [him] to unnecessary and wanton pain and suffering and thereby run afoul of the Eighth Amendment." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). The court "look[s] at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). "To establish an Eighth Amendment claim for deliberate indifference to serious medical needs, … [t]he plaintiff must prove that he suffered from (1) an objectively serious medical condition to which (2) [the defendants were] deliberately, that is subjectively, indifferent." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) (internal quotation marks omitted). Although Perkins need not produce *evidence* of deliberate indifference at the pleading stage, he still must *allege* deliberate indifference to survive dismissal. *See Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

**I.     Smith, Eshleman, and Kercinik**

Focusing on the second element of Perkins's deliberate indifference claims, Smith, Eshleman, and Kercinik contend that the complaint does not allege that they gained actual knowledge about his serious medical conditions from the routine screenings they conducted upon his transfers between prisons. Doc. 120 at 4-5; Doc. 140-1 at 6-7. They are correct.

"To establish deliberate indifference, a plaintiff must show that the defendant '*actually* knew of and disregarded a substantial risk of harm.'" *Mitchell*, 895 F.3d at 498 (quoting *Petties*, 836 F.3d at 728); *see also Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017) ("A failure to act in the face of an obvious risk of which the official *should* have known is insufficient to make out a claim."). Once Perkins's improper "information and belief" allegations are set aside, the complaint does not plead facts that support a reasonable inference that Smith, Eshleman, or

Kercinik knew of but disregarded his medical issues during the brief examinations they conducted. Doc. 117 at ¶¶ 28-29, 39; *see Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016) (holding that the plaintiff did not have a viable claim against the defendant where "[n]othing in the record suggests that [the defendant] had actual knowledge of specific facts that would support an inference that [the plaintiff faced] … a substantial risk of harm"); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) ("The defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference."). Even if, as Perkins maintains, his medical conditions were "observable," Doc. 137 at 7; Doc. 145 at 11; *see also* Doc. 117 at ¶ 21 (alleging that "the rash had spread to [his] legs and arms," but not that it was visible when he encountered Smith, Eshleman, and Kercinik), he does not allege that Smith, Eshleman, or Kercinik in fact observed those conditions or understood their seriousness. That these three defendants failed to note Perkins's serious medical conditions during routine transfer screenings—absent any allegations that, for example, Perkins told them about, or that they were otherwise made aware of, those conditions—would at best be negligent, which is not enough to constitute deliberate indifference. *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) ("[W]e have consistently held that deliberate indifference requires a showing of more than mere or gross negligence.") (internal quotation marks omitted) (collecting cases); *Minix v. Canarecci*, 597 F.3d 824, 831-32 (7th Cir. 2010) (holding that the medical provider's "alleged incompetence in assessing [a patient] shows, at most, negligence, which is insufficient for … [a] deliberate indifference claim").

Because Perkins has not alleged that Smith, Eshleman, and Kercinik knew about a serious medical risk, his claims against those defendants are dismissed.

## II.     Mills and Buczkowski

Mills and Buczkowski do not dispute that Perkins alleges that they were aware of his serious medical conditions, but argue that he fails to allege that they were deliberately indifferent to those conditions. Doc. 140-1 at 4-6. A plaintiff claiming constitutionally inadequate medical care "need not [allege] that he was literally ignored to [make out] a deliberate-indifference claim." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) (internal quotation marks omitted); *see also Petties*, 836 F.3d at 731 ("[R]epeatedly, we have rejected the notion that the provision of *some* care means that the doctor provided medical treatment which meets the basic requirements of the Eighth Amendment.") (emphasis added). Rather, a plaintiff must allege that the defendant's medical decision was "such a substantial department from professional judgment" as to indicate "that the [defendant] did not base the decision on such a judgment." *Petties*, 836 F.3d at 729 (internal quotation marks omitted); *see also Whiting*, 839 F.3d at 663 (similar).

Mills and Buczkowski each saw Perkins twice: the appointments with Mills were nearly six months apart, Doc. 117 at ¶¶ 44, 58 (May 13 and October 27, 2015), while the appointments with Buczkowski were four days apart, *id*. at ¶¶ 35-36 (March 1 and March 5, 2015). This difference in the timing of the appointments is critical.

At his first appointment with Mills in mid-May 2015, Perkins was prescribed ibuprofen and instructed to return if his back pain persisted for more than 48 hours. *Id*. at ¶ 44. This course of treatment comported with Wexford's back pain protocol, which recommended a physician referral where "severe pain" does not improve "after 48 hours of regular treatment." *Ibid*. (alteration omitted); *see also Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (explaining that a medical provider "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the

9

determination … does not go against accepted professional standards"). Mills employed the same wait-and-see approach when Perkins returned with back pain in late October, over five months later. Doc. 117 at ¶ 58. But there is no indication that Mills's returning to the same regimen after nearly half a year was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment," *Whiting*, 839 F.3d at 664 (internal quotation marks omitted), especially given Perkins's report that his back pain had improved since the mid-May appointment, Doc. 117 at ¶ 58.

As to the hand pain, Perkins does not adequately allege that he told Mills about that pain at the mid-May 2015 appointment, *id*. at ¶ 44 ("On information and belief, Perkins raised … the chronic hand pain during the May 13, 2015 visit."), and recognizes that Mills's treatment and sick call referral at the late-October 2015 appointment followed Wexford's protocol, *id*. at ¶ 58 ("Regarding the chronic hand pain, Mills now … employ[ed] Wexford's protocol for treatment of muscle strain or joint pain by nurses[ and indicated] that a medical sick call appointment would be appropriate, along with acetaminophen and cold compresses."). Accordingly, because Mills followed Wexford's protocol upon learning of Perkins's hand pain, any claim that his treatment of that pain was constitutionally deficient fails. *See Holloway*, 700 F.3d at 1074 (explaining that a medical professional's compliance with professional standards is inconsistent with deliberate indifference); *see also Whiting*, 839 F.3d at 664 (similar); *cf. Petties*, 836 F.3d at 729 (noting that a defendant may act with deliberate indifference where he "fails to follow an existing protocol").

Perkins also contends that Mills should have more thoroughly diagnosed Perkins's hand and back pain. Doc. 117 at ¶¶ 58, 79. But Mills's diagnosis does not rise to the level of deliberate indifference, especially given that he (a nurse) referred Perkins to the medical sick call

and prescribed treatment consistent with Wexford protocol. *See Giles*, 914 F.3d at 1049, 1051 (explaining that negligence does not constitute deliberate indifference); *see also Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008) (rejecting a medical indifference claim where a defendant who failed to order additional testing did not "actually dr[a]w the inference that [the plaintiff's] symptoms posed a serious medical risk") (internal quotation marks omitted). Similarly, Mills's prescribing 1% hydrocortisone cream for Perkins at the late-October 2015 appointment does not constitute deliberate indifference given that Mills is not alleged to have known about Perkins's prior unsuccessful use of hydrocortisone cream or the severity and duration of his pain. *Id*. at ¶ 58. Perkins may have preferred a more aggressive course of treatment given his past experience, but based on what Mills is alleged to have known, prescribing the hydrocortisone cream did not amount to deliberate indifference. *See McGowan v. Hulik*, 612 F.3d 636, 641 (7th Cir. 2010) ("[I]n the end, this dispute is over nothing but the choice of one routine medical procedure versus another, and that is not enough to state an Eighth Amendment claim."); *see also Cesal*, 851 F.3d at 721 (similar). Perkins's claims against Mills accordingly are dismissed.

By contrast to the situation with Mills, Perkins alleges that he *did* tell Buczkowski that the 1% hydrocortisone cream was not working four days after Buczkowski prescribed a week's supply. Doc. 117 at ¶¶ 35-36. As noted, Wexford's protocol recommends 1% hydrocortisone cream for "non-serious rashes" where there are no "open wounds." *Id*. at ¶ 35. Given that Perkins's rash was "red and raised" and "covered [his] arms and legs," causing him "severe[] pain[]," it is plausible that Buczkowski's failure to "indicate any … other treatment or follow-up" after Perkins reported no improvement with a treatment intended for non-serious symptoms, *id*. at ¶¶ 35-36, was deliberate indifference. *See Petties*, 836 F.3d at 729 (noting that deliberate

11

indifference can be inferred "where a prison official persists in a course of treatment known to be ineffective"); *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011) ("The … record indicates that [the plaintiff] was given pain medication, but he was reasonably seeking medication to treat, not simply mask, his condition."); *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (explaining that deliberate indifference could be inferred "from the medical defendants' obdurate refusal to alter [the plaintiff's] course of treatment despite his repeated reports that the medication was not working and his condition was getting worse"). Likewise, that Buczkowski did nothing to address Perkins's complaint of chronic, debilitating hand pain, Doc. 117 at ¶ 36, plausibly reflects deliberate indifference to that pain. *See Perez*, 792 F.3d at 780 (holding that the plaintiff stated a deliberate indifference claim where the defendant nurse was alleged to "ha[ve] knowledge of [the plaintiff's] severe injury, yet failed to provide adequate medical treatment … herself … or to ensure that others did"); *Arnett*, 658 F.3d at 752 (same, where the defendant was alleged to have known that the plaintiff "was in continuous pain as a result of the inflammation of his joints[] yet[] … didn't provide him medication to treat his underlying condition").

As Buczkowski notes, Perkins complained that the hydrocortisone cream was ineffective before he had exhausted his week's supply. Doc. 140 at 4-5; Doc. 149 at 3-4. But there is no indication in the pleadings that Perkins's symptoms would have improved only had he applied the cream for an entire week. Moreover, it is plausible that the lack of any improvement after more than half of a seven-day course of treatment made it obvious that the cream, intended only for "non-serious rashes," Doc. 117 at ¶¶ 35-36, was insufficient to address his severe pain or underlying skin condition. *See Petties*, 836 F.3d at 728 ("If a risk from a particular course of medical treatment (or lack thereof) is obvious enough, a factfinder can infer that a prison official knew about it and disregarded it."); *Arnett*, 658 F.3d at 754 ("Although the defendants provided

12

him pain medicine, a medical professional's actions may reflect deliberate indifference if [s]he chooses an easier and less efficacious treatment without exercising professional judgment.") (internal quotation marks omitted).

Although Buczkowski may show at summary judgment or trial that she provided "constitutionally adequate care" by continuing the hydrocortisone treatment for a full week, at this point Perkins has alleged enough to survive dismissal. *See Perez*, 792 F.3d at 780 (holding that a complaint stated a deliberate indifference claim, but recognizing that the defendant could later produce evidence of "constitutionally adequate care"). Accordingly, Perkins's claims against Buczkowski may proceed.

## Conclusion

Perkins's claims against Smith, Eshleman, Kercinik, and Mills are dismissed. The dismissal is without prejudice because those defendants were added to the case only recently. *See Pension Trust Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018) ("We repeatedly have said that a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [the] complaint before the entire action is dismissed.") (internal quotation marks omitted). Perkins has until March 18, 2019 to file an amended complaint. If he does not do so, the dismissal of the claims against those defendants will convert automatically to a dismissal with prejudice.

February 25, 2019

_____
United States District Judge